*725 MEMORANDUM BY THE COURT
The above-entitled cases, together with the case of Winchester Manufacturing Co. v. United States, No. D-842 [72 C. Cls. 106] were all tried together upon the same evidence so far as it was applicable. On December 1, 1930, special findings of fact, opinion, and judgment were rendered in case D-842 dismissing the petition. The findings of fact in the case last above referred to did not include all of the facts in the cases now before the court but they differ only from the facts in the cases now before the court in. respect to specific articles contracted for, numbers identifying the contracts, the dates of the contracts, certain letters (all in the same form), amounts claimed, and other similar matters which do not affect the legal principles upon which the case first tried (D-842) was decided. The foregoing statement is subject to one exception: Contract No. 14064 (case D-844) does not involve any claim for profit on unworked materials, consequently Findings XX to XXYI, inclusive, made herein have no application to that case. Under contract P7388-1564Sa (case D-845), contract 16302 and supplement (case D-846), and contract P14l72-2370Sa and supplement (case D-847), the profit on unworked material alone is involved, and the findings made herein with reference to claims for amortization and depreciation (Findings VI to XIX, inclusive, except as stated therein) have no application to cases D-845, D-846, and D-847.
The findings of fact rendered herein include all matters material to the consideration of the four cases involved. Where the findings are not shown by this memorandum to apply solely to one or more of these cases, they are general and apply to all. Every question of law that can arise under the findings of fact made herein was decided by the opinion in No. D-842, 72 C. Cls. 106, and our judgment in these cases *726 is controlled thereby. It will therefore be ordered that the several petitions in cases D-844 D-845, D-8.46, and D-847 be dismissed, and judgment rendered in each case in favor of the defendant.
Williams, Judge; Littleton, Judge; and Booth, Chief Justice, concur.
Whaley, Judge, took no part in the decision of these cases.
OPINION ON MOTION POR NEW TRIAL
Green, Judge,
delivered the opinion of the court:
These cases are all of the same class. The testimony was taken at the same time for all four of the cases now before the court, together with No. D-842, under an agreement that the cases were to be considered and determined upon this evidence in so far as it was applicable to the respective claims of the plaintiff in each case. No. D-842 was first heard, as it involved all of the issues that are raised in any of the other cases. Judgment was rendered therein in favor of the defendant after elaborate argument; a motion for new trial was made, again argued extensively, and, after careful consideration, the motion for new trial was overruled, in both instances the Chief Justice dissenting as to the claim for profit on unworked material. (72 C. Cls. 106.) Plaintiff thereupon applied for certiorari to the Supreme Court and certiorari was denied. (284 TJ. S. 633.) Upon submission of the four above-entitled cases the court in a memorandum opinion held that the judgment in each case was controlled by that entered in No. D-842. Plaintiff has again filed a motion for new trial and has been again permitted to reargue the matters involved in these cases. In their argument counsel contend that the decision in No. D-842 was erroneous and that in any event the opinion and judgment rendered therein are not controlling. The court has carefully gone over the evidence for the fourth time and considered the argument on the questions of law, and for the fourth time concludes that the plaintiff’s case is without foundation and must fail for many reasons.
The plaintiff’s case is based upon contracts to manufacture war material, which are more particularly set o.ut in the *727 findings of fact made in the cases now before the court and in No. D-842. These contracts all provided that they might be canceled by the Government, and also provided what should be paid in event of cancellation. As construed by the court and by the parties themselves at the time they were being carried out, they were the most liberal of any-that has so far come to our notice. The contracts all provided that in case of cancellation the plaintiff should be paid for all costs and liabilities incurred and for a profit-thereon. It did accordingly receive payment for every imaginable kind of expense and cost connected with the contracts,, together with ten per cent profit thereon. It was paid for depreciation, for accelerated depreciation, for interest on the value of its plant, for work done, for material which it furnished or supplied and a profit thereon, for overhead, for-storage and handling, including that on material not used— in short, everything that could be thought of in connection, with its actual cost or expense. Under these provisions the plaintiff has been paid very large sums which fully compensate it. Notwithstanding the matter has been passed upon so many times, it is again contended by the atto-rnej’s of plaintiff with a zeal worthy, as we think, of a better cause, that the contracts also entitled the plaintiff to amortization on its plant and to a profit on unworked material, as to which it has already received all the expense, if any, incurred, together with a profit thereon. The amortization provision might have been reasonable if the additions to plaintiff’s plant had been originally constructed or machinery acquired for the purpose of performing these contracts, but they were-not. This was all done for the purpose of performing a contract with the British Government. So far as the profit on unworked material is concerned, beyond the expense in relation thereto already received by plaintiff, it is obvious that no reason can be given for such an extraordinary arrangement. The plaintiff, of course, would not be prevented from recovering thereon if the contracts so provided and it. complied with their other provisions necessary to enable it to recover thereon, but as we proceed with the consideration of the case it seems to us that nothing can be plainer than that neither plaintiff nor defendant so understood the con *728 tracts in their inception as to either amortization or profit on unworked material. . When settlement was made on vouchers for work done or other claims ai'ising under these contracts no claim was made on these items. When its claims were presented to the compensation board there was no mention ■of any claim for profit on unworked material, the plaintiff .already having received payment for what material it furnished, together with a profit thereon. The only claim then mentioned was for amortization, and this was then urged not on the ground that there was provision therefor in the contracts but because it was claimed that plaintiff had been using a special plant and that under a Treasury decision it was entitled to amortization.
In the motion for new trial in the above-entitled cases certain provisions of the contracts in these cases and in case No. D-842 are set out in parallel columns, and it is contended by counsel that these provisions are so different from those contained in case No. D-842 that the decision therein is not controlling. These provisions have again been examined by the court. There is a difference in wording but it does not strengthen plaintiff’s case. In No. D-842 (the case heretofore decided) the contract provided that the plaintiff should receive 10 per cent profit upon the cost of material “ furnished by the Government for the purpose of the contract.” Of the cases at bar, the contract in No. D-846 is the only one that contains a similar provision. No. D-844 does not involve any profit on unworked material. In Nos. D-845 and D-847 specific provisions show that the actual cost applies to “ cost of materials, supplies, labor, special appliances, jigs, tools, fixtures, and gauges made by or for the contractor entering into or in good faith purchased, made, supplied, or acquired for use in the manufacture ” of articles under the contract. (Italics ours.) It is clear that this language applies only to what the contractor purchased or supplied and not to what the Government held in its warehouse, or other Government property not used in performing the contract. Of the cases under consideration therefore, Nos. D-844, D-845, and D-847 may be eliminated so far as the question of profit on unworked material is concerned. This leaves D-846 •as the only case (except the case originally decided, No. *729 D-842) in which we now have before us the question of whether any profit can be allowed plaintiff on the unworked' material which was not delivered to plaintiff, and on this point we adhere to our former decision on the construction of' the contract. We think the expression, “ furnished by the-Government for the purpose of the contract,” contained in-the contract of D-846, as stated in the original opinion on D-842, can not be held to apply to property that was still contained in a Government warehouse, under Government control, which property could only be obtained by plaintiff' on request for use in completing the contract. The only other unworked material was that purchased and owned by the Government which remained in the hands of the subcontractors when the contract was canceled. But as to this-there is no evidence as to the proportion of the property in the hands of the subcontractors which should be allotted to-the contract in No. D^846, which, as above observed, is the-only one of the cases now before the court in which there can properly be made a claim for profit on unworked material furnished by defendant. As we shall show further-on that plaintiff can not in any event recover a profit on the unworked material, there is no necessity for continuing the discussion upon these matters.
Notwithstanding the previous decisions of this court,, everything determined by the opinion and judgment in D-842 is again reargued. Ordinarily we would simply state, as was done in the memorandum opinion heretofore filed in the cases now before the court, that the findings of fact and opinion rendered in that case finally and absolutely disposed of everything that was1 involved in it unless this court was disposed to overrule tire opinion rendered therein, which it. is not. But a peculiar situation has arisen herein in which there seems to have been a misunderstanding of the issues1, involved in the cases before the court and also, as we think, a. misconception of the evidence.
As we have shown above, in one of the cases now under, consideration a claim is set up for amortization or depreciation in value of the plaintiff’s plant. Taken as a whole, the testimony introduced to support this claim made in D-842 and D-844 was extremely unsatisfactory. It was incompe *730 tent as shown in the original opinion; it was contradictory; the principal witness lacked candor and was unwilling to ■submit to - a proper cross-examination. In our opinion, his testimony showed unmistakable marks of being adjusted to conform to an unsound theory. The testimony on this point given by defendant’s witnesses, who are at least as reliable as those of plaintiff, is directly to the contrary from that given to support the claim. One accountant, whose qualifications seem to us the highest of any who testified in the case, asserted that the calculations of plaintiff’s chief witness were entirely erroneous and that a proper accounting would show that in the matter of depreciation the plaintiff had been overpaid in a considerable sum. Our ultimate conclusions on the testimony relating to this matter are shown in the findings which are adverse to the plaintiff for the reasons ■above stated.
It should be noted also that all the witnesses of plaintiff, in testifying in relation to the claim now under consideration, referred to it as one for amortization. Plaintiff now calls it a claim for “ depreciation in value ” because those words are used in the contracts. But whether it is called “ amortization ” or “ depreciation in value ” it is utterly inconsistent with the claim for ordinary depreciation. Ordinary depreciation was allowed each month on plaintiff’s vouchers certifying that it was correct, but it was not correct if plaintiff was to be allowed depreciation in value, for plaintiff could not have both, and no claim for depreciation in value as then presented.
When this claim was submitted to the compensation board, the board held that taking all of the provisions of the contract together and the intention of the parties as shown by their subsequent actions, together with the fact that the plant was not constructed for the defendant but for the British •Government, ordinary depreciation was all that was intended to be allowed. In this holding we concur and note in this connection that the provision upon which plaintiff relies was under a general provision of the contract as follows :
“ The actual cost shall include the following, and items similar thereto in principle, it being intended) that the con *731 tractor shall be fully reimbursed for expenditures actually made in good faith in the performance of this contract.” (Italics ours.)
This provision, as we think, defines the intent of the contract.
We need not however continue the discussion on this point because the findings show that plaintiff did not support this claim by proper proof, as will hereinafter be shown.
In case D-842, the case first heard, the contract provided for the determination of all matters of reimbursements, including profits, to the contractor by a compensation board whose decisions were binding on both parties, subject to the approval of the contracting officer. In D-844 the board was to be apx>ointed for the determination of the actual cost “ as defined above,” and its determination was binding on both parties subject to the approval of the contracting officer. The contract in D-846 contained the same provision, but the contracts in D-845 and D-847 varied this provision by making the decision of the board subject to the approval of the Secretary of War, whose decision should be final. The “ cost defined above ” had nothing to do with profit on un-worked material, but plaintiff still contends that it was not bound by the conclusions of the compensation board with reference to the claim for amortization made under the contracts in D-842 and D-844. In support of this contention plaintiff insists that it knew nothing with reference to the appointment of this compensation board, although plaintiff’s president wrote a letter to the ordnance claims board stating that it was understood “ that the claims board is now authorized to act as the compensation board ” and that accordingly it (plaintiff) was taking up the matter “ through your board.” Thereafter, on its own motion, it presented all of its claims for amortization to the duly appointed compensation board which disallowed them, and after the decision was affirmed by the War Department Claims Board took an appeal to the appeals section of that board which denied the claims. The plaintiff then appealed from this decision to the Secretary of War. The Secretary ordered a rehearing by the appeals section, and after oral argument the appeals section again rendered a decision denying the plain *732 tiff any relief and an appeal was again taken by plaintiff to the Secretary of War. On June 2, 1921, an order was entered by the secretary disallowing the claim. Plaintiff' complains that the contracting officer did not approve the-findings of the compensation board, although it was in no way hindered by the Government from presenting the conclusions of the compensation board to this officer had it so-desired. As rebutting the conclusions which would be drawn from this state of facts, plaintiff relies on a statement which it made in a letter after it had presented its claims for amortization to the compensation board and after it had taken appeal from the War Department Claims Board to-the appeals section of such board. In this letter it stated it was reserving all its rights of procedure under its contracts.. But plaintiff could not by a general reservation of this kind obliterate the effect of its having never asked that its claims be submitted to the contracting officer, but on the contrary had proceeded differently on its own motion. The contention on the part of the plaintiff is in effect that bjr this statement the plaintiff acquired the right to accept the decisions of the numerous hearings and appeals which it liad inaugurated and pressed to a conclusion if these decisions were favorable, and if they were unfavorable to repudiate them.. As stated in the original opinion it could not play fast and loose with the Government in this manner and after having-led the Government to believe that it was in good faith submitting its claims to the compensation board and the other boards, and having taken its appeal to the Secretary of War, it was estopped to claim that all of these decisions against it amounted to nothing because the decision of the compensation board had not been approved by the contracting officer.
It ought also to be said that plaintiff’s argument on this-point, when carried to its logical conclusion, amounts to a contention that it was for the defendant to see that plaintiff’s claims were properly presented and approved in accordance with the contracts. It is hardly necessary to say that such is not the law. The burden was on plaintiff to establish its claims in accordance with the contracts. De- *733 fenclant, it is true, could not put any obstacle in the way of this being done without releasing plaintiff from this obligation, but the evidence shows affirmatively, as before stated, that defendant in no way hindered plaintiff from proceeding in accordance with the contracts. When plaintiff chose to proceed differently defendant was not obliged to object thereto.
Taking up next the claim for profit on unworked material, the findings show that it was not presented to the Government in any form until about -five and a half years ■iafter the contracts had been canceled. The other claims of the plaintiff had long before been presented for consideration and we think the claim now made with reference to profit on the unworked material is an afterthought. It has been urged by counsel for plaintiff that when this claim was presented to the Secretary of War it was based upon an audit made by the Government, the inference being that there was a Government audit made for the purpose of considering this claim. The only basis for this contention is an ex parte statement contained in the claim as presented to the Secretary of War, which recited:
“ The basis of the above claim is an audit of the books of the claimant made jointly by the officers of your department and the claimant.”
This statement finds no support in the evidence. It appears that plaintiff’s accountants at some time made up a statement of the amount of this unworked material and the value thereof. Also that the quantity of unworked material remaining after the contracts were completed had been checked or compared by the Government. No issue is raised as to the amount of unworked material or its value, but the evidence as a whole shows that no joint audit of its value was made. For several years after the contracts had been canceled plaintiff was having numerous items allowed and paid and was engaged in presenting its claim for amortization to the compensation board and other boards, but the Government was not informed that the plaintiff had a claim for profit on unworked material until May 15,1921, although the contracts not completed had been canceled in December, 1918.
*734 It was argued by counsel for plaintiff that there were costs and expenses not allowed plaintiff which would be a reason for contracting to pay a profit on the unworked material, but if plaintiff has not received all the costs and expenses of every kind incurred in connection with the contracts it is its own fault, for the broad and sweeping provisions of the contracts which have been hereinbefore set out provided for reimbursement for every kind of cost and liability incurred. If plaintiff were now bringing this suit to recover any such costs it would recover the same when proved, but there were no other costs. The findings show that the plaintiff was fully equipped to carry out the contracts at the time negotiations were entered into with it by the Government.
Finally, there is an all-sufficient reason for denying plaintiff recovery for profit on unworked material no matter how the provisions of the contracts with reference to such material are construed. Under the facts in these cases this matter is determined by another clause of the contracts. All of the contracts provided that in case of doubt or dispute as to the meaning of anything in the contract." the matter shall be referred at once to the Chief of Ordnance,” from whose decision the contractor had the right of appeal to the Secretary of War, whose decision should be final. Instead of' being presented first to the Chief of Ordnance as the contracts required, the claim was presented only to the Secretary of War without any statement or account accompanying it. Counsel for plaintiff say that there never was any doubt or dispute about this claim, but there could not be as long as the claim was not made or presented. During the years that intervened between the cancellation of the contracts and the presentation of the claim to the Secretary of War, apparently both parties considered that there was no basis for such a claim, but a dispute arose as soon as it was made. Evidently there had been so much doubt about the claim for profit on unworked material having any foundation in the contracts that it was not presented until years after it arose, and certainly it was disputed when the Government never recognized it and the Secretary of War denied it when it was presented. Plaintiff’s contention is in effect that a provision of this kind may be nullified simply by not *735 mentioning the claim to the other party. With this contention we are unable to agree. We adhere to the opinion expressed in No. D-842 that this matter alone is sufficient to prevent plaintiff’s recovery for profit on the unworked material.
A reconsideration of the cases now before the court satisfies us that the former findings of fact and decisions made-by the court were correct and the motion for new trial in each of these cases will therefore be overruled. It is so ordered.
Whaley, Judge-; and Williams, Judge, concur. Booth,. Chief Justice, took no part in this decision on account of' illness.